THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MYRON ADAMS *et al.*, Defendants-Appellants.

First District (4th Division)   No. 82—2609

Opinion filed November 29, 1984.

Chester Slaughter and Freddrenna M. Lyle, both of Chicago, for appellant Walter McKee.

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant Myron Adams.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David C. Kluever, and Kevin M. Sheehan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Following a jury trial, defendants, Myron Adams and Walter McKee, were convicted of armed robbery and murder (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2(a), 9—1(a)) of Donald Pender. Adams received concurrent sentences of 25 years for murder and 15 years for armed robbery; McKee received concurrent sentences of 40 years for murder and 30 years for armed robbery. Both defendants appeal.

We are asked to consider (1) whether the evidence proved guilt beyond a reasonable doubt; (2) whether it was reversible error for the trial court to prevent the defense attorney from cross-examining the prosecution's witness about the circumstances surrounding the witness' own detention, questioning and subsequent accusatory statement to the police; (3) whether there was prosecutorial misconduct which prevented defendants from receiving a fair trial; (4) whether it was reversible error for the trial judge to fail to question prospective jurors about racial prejudice and the possibility that the defendants would not testify; (5) whether the prosecutor's use of peremptory challenges to exclude blacks from the jury violated the defendants' constitutional rights; and (6) whether it was reversible error for the trial court to refuse defendant McKee's instruction on the credibility of a narcotic addict.

We reverse.

The following evidence was adduced at trial. Norman Gill, a male prostitute, testified for the State. Shortly after 1:30 a.m. on November 10, 1981, he walked to the corner of West End and Cicero Avenues in Chicago for the purpose of soliciting customers. Gill was dressed as a female. On his way to Cicero and West End, Gill noticed defendant McKee walking a half block behind him. Gill gave conflicting testimony about whether he saw defendant Adams in the vicinity

at the time in question.

The victim, Donald Pender, stopped his car at the corner of Cicero and West End avenues and conversed with Gill. Pender and Gill agreed that Gill would perform certain sexual acts in exchange for $20. At Gill's direction, Pender drove to a deserted location two blocks away. Gill testified that he told Pender that he (Gill) was a man. Pender gave Gill $20 and Gill performed an act of fellatio, and then they had intercourse in the front seat of Pender's car.

Gill and Pender had just completed intercourse and rearranged their clothing when defendants McKee and Adams entered the car. McKee pointed a gun at Pender and told him to "give it up." Gill understood that to mean McKee wanted Pender's money. Gill's testimony was conflicting as to defendant Adams' action in demanding money from either Gill or Pender. Gill was allowed to leave the car. When he was approximately 15 feet away, he looked back and saw the gun, held by McKee, go off. McKee was sitting next to Pender in the front seat of the car when the shooting occurred.

After the shooting, Gill ran to the intersection of West End and Cicero Avenues where he was stopped by the police. He was asked by the officers for his name, address, and some form of identification. Gill gave his name as Norman Thompson and told the police that he had no identification. The police drove Gill back to the scene of the shooting and inquired whether he (Gill) knew anything about it. Gill denied knowing Pender or anything about the incident. He was then driven home by the police officers.

Two Chicago police officers testified that witnesses placed Gill with Pender immediately prior to the shooting. On November 13, 1981, the police took Gill from his home to the area four violent crimes headquarters. Gill was placed in a room and questioned many times by several police officers over the next 28 hours. He was told that witnesses had placed him with the victim at approximately the time and place of death. Gill repeatedly denied any knowledge of Pender's death. Gill eventually made a statement implicating the defendants in the killing. There was conflicting testimony about whether Gill had been in custody 28 or 36 hours at the time he made the statement.

Gill testified that at the time of the killing, he spent $150 per day on drugs, namely, heroin, "T's" and "blues." He had used heroin approximately 1½ hours before meeting Pender. At the time of trial, Gill testified that he had been drug-free for four months.

Chicago police officer Gerald Dorich testified that he interviewed several known prostitutes, as well as Gill, on November 12 and 13,

1981. On November 13, pursuant to certain information, Dorich brought defendant McKee into the police station. Gill identified McKee through a two-way mirror. Shortly thereafter, Gill gave a complete statement naming McKee and Adams as the killers. Gill later picked Adams' photograph out of a group of five photographs. On November 30, 1981, defendant Adams was arrested.

Gill testified that he and defendant McKee had been lovers prior to November 10, 1981, but had terminated their relationship before the date of the killing. Gill knew defendant Adams by sight, but the two were not friends.

The medical evidence established that Pender died from a single gunshot to the abdomen. The murder weapon was not recovered.

At trial, defense attorneys repeatedly attempted to question Gill, the State's principal witness, about what had occurred during the 28 to 36 hours he spent at the police station prior to making a statement. Specifically, the defense attempted to ask Gill whether he had been charged with the murder before he named Adams and McKee as the killers, whether he had been given *Miranda* warnings while in custody and prior to his statement, and whether he had been free to leave at any time prior to the statement. The defense also attempted to elicit the same information from the police officers who testified. The trial court sustained the State's objection on each occasion, and the defense was not permitted to pursue the aforementioned line of questioning.

At the conclusion of the trial, the jury found both defendants guilty of murder and armed robbery: McKee received concurrent sentences of 40 and 30 years, respectively, and Adams received concurrent sentences of 25 and 15 years, respectively. Both defendants have appealed their convictions, and the appeals have been consolidated before this court.

█ Defendants contend they were not proved guilty beyond a reasonable doubt because the State's star witness, Norman Gill, was a liar and his testimony was incredible. The State offers the opposite view.

It is the province of the jury to weigh the evidence, judge the credibility of the witness and determine the facts (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 716, 431 N.E.2d 1154, 1158), and the testimony of a single credible witness is sufficient to convict. 103 Ill. App. 3d 711, 717, 431 N.E.2d 1154, 1158.

The record establishes beyond any doubt that the victim was robbed and brutally murdered. Defendants, however, claim that there was insufficient evidence to link them to the crimes. The sole evi-

dence on this material fact was the testimony of Gill. There can be no question that if Gill told the truth, defendants committed the crimes. Gill stated that both defendants entered the victim's car, defendant Adams demanded money, defendant McKee held a gun and, finally, Gill saw McKee fire the gun at the victim. There is some corroboration for parts of Gill's story, such as the description of the victim's car and the location of the crimes, but there is no corroboration for Gill's statement that defendants were the killers. Thus, Gill's testimony was the only evidence linking defendants to the killing.

It is the jury's function to weigh the evidence and judge the credibility. (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 716, 431 N.E.2d 1154, 1158.) There is no requirement that every or any aspect of a witness' testimony be corroborated by other evidence. Indeed, this court declines to substitute its judgment for that of the jury which heard the evidence and had the opportunity to observe the demeanor of the witnesses (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 829, 447 N.E.2d 1029, 1039), unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt of guilt (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 716, 431 N.E.2d 1154, 1158).

Here, the jury had an opportunity to observe Gill, listen to his testimony, assess his demeanor and compare his story with other evidence in the case. Based on facts which the record shows were presented to the jury, we cannot say there was insufficient evidence upon which the jury could find defendants guilty beyond a reasonable doubt.

Defendants next contend that they were denied their constitutional right to confront their accuser when the trial court prevented defense counsel from cross-examining Gill so as to show bias, motive or interest. Defendants point out that their theory of defense was based on the premise that the prosecution's witness, Gill, was lying and had a reason for doing so. Defendants could not develop their theory without cross-examining Gill in the manner prohibited by the trial court. Further, the jury could not have made a fair determination of guilt or innocence without having been apprised of defendants' theory. Both defendants vigorously assert that the trial court's action constituted reversible error. We note that the State's initial argument is that defendants have waived this argument for purposes of appeal by failing to raise it in their post-trial motion. However, the waiver rule is not absolute, and the error may be considered on appeal if it appears that the effect was so prejudicial as to prevent defendants from receiving a fair trial. (*People v. Jackson* (1981), 84 Ill. 2d 350,

359, 418 N.E.2d 739, 743.) Accordingly, we reject the State's initial argument that this issue cannot be considered by this court.

The State advances several theories in support of the trial court's limitation of defense counsel's cross-examination of Gill. The gist of the State's argument is that defense counsel was on a fishing expedition and had no factual basis for the inquiry they sought to make. The State concludes that even if the trial court erred in limiting the cross-examination of Gill, such error was harmless. We do not agree.

An examination of the record clearly establishes that the State's case turned on the credibility of Gill. In circumstances in which credibility of a witness is a crucial issue, the trial court should permit the parties wide latitude unimpeaching and rehabilitating the witness' credibility. Only in this way can the jury gain access to all the information and impressions necessary to enable it to evaluate accurately the credibility of witnesses.

We believe it was error for the cross-examination of Gill, the State's witness, to have been so restricted that the defense was unable to explore the possibility that the witness may have been biased or testifying falsely. In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, the United States Supreme Court addressed a similar problem and recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 353-54, 94 S. Ct. 1105, 1110-11.

We need not discuss in detail the general principles which govern the use of testimony to show a witness' bias, interest or motive to testify falsely. (See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261; *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.) The fact that a witness has been arrested or himself charged with an offense may be inquired into for the purpose of showing that his testimony might be influenced by bias, interest, or a motive to testify falsely. *People v. Freeman* (1981), 100 Ill. App. 3d 478, 480-81, 426 N.E.2d 1220, 1222.

The jury is entitled to hear the defense theory that the witness may be testifying falsely because he is or was vulnerable to pressure from the police regarding his own connection with the crime. See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382; *People v. Baptiste* (1976), 37 Ill. App. 3d 808, 347 N.E.2d 92.

While recognizing that the scope of cross-examination is generally within the trial court's discretion, that discretion must be exercised in

such a way as to allow the defendants wide latitude in establishing bias, motive or interest by a witness. *People v. Pizzi* (1981), 94 Ill. App. 3d 415, 420, 418 N.E.2d 1024, 1028.

Here, the trial judge refused to permit the defense to ask Gill whether he himself had been suspected, arrested or charged with the crimes. If Gill were under suspicion, arrested or charged in this case, this may provide Gill with a motive to cast suspicion from himself by pointing the finger of guilt at others. This court is not suggesting that this is in fact what happened. However, the defense was entitled to develop this theory and ask the jury to consider the possibility in judging the credibility of the State's star witness.

The trial judge's limitation of the cross-examination of Gill deprived the defense of the opportunity to thoroughly explore Gill's credibility. In a case in which credibility is the key issue, wide latitude in conducting cross-examination is particularly important. The trial court abused its discretion by restricting the defense in its cross-examination of Gill. Moreover, we cannot say that the jury's assessment of Gill's credibility and thus its verdict would have been the same if the trial court would have given the defense the latitude to which it was entitled.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial. In light of our holding, we will not address the additional issues raised since those issues are unlikely to reappear in a new trial.

Reversed and remanded.

LINN, P.J., and JIGANTI, J., concur.