THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee v. RICHARD BOALBEY, Defendant-Appellant.

Third District—No. 3—85—0197

Opinion filed May 14, 1986.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, and Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, defendant, Richard Boalbey, was convicted of unauthorized use of food stamps (Ill. Rev. Stat. 1983, ch. 23, par. 8A—4) and sentenced to 12 months' conditional discharge and ordered to pay restitution and court costs. On appeal he contends: (1) the evidence established the affirmative defense of entrapment as a matter of law, (2) the trial court erred in denying his motion for a new trial when during testimony a prosecution witness, without connecting

defendant, brought out evidence of other crimes allegedly committed at defendant's residence and (3) because the instructions given failed to include what an authorized versus an unauthorized purchase of food stamps is, he was denied a fair trial. Because our decision on the first issue is dispositive of this appeal, it is the only issue to be discussed.

There is little dispute concerning the facts in this case. According to the State's witness, in the summer of 1984, the Rock Island police department began investigations of violations of the food-stamp laws. The defendant, not a suspect in the investigation, conducted an on-going yard sale during this same summer.

On August 1, David Dale, an undercover police officer, went to defendant's yard sale where he offered defendant $200 worth of food stamps for an electric typewriter. The defendant wasn't interested. Dale then asked defendant if he would be interested in an outright purchase. The defendant offered him $30. After some negotiations Dale settled on $35 for $200 worth of food stamps. Officer Nixon observed the sale transaction from 100 yards away.

Thirty days later, on August 31, Dale again approached defendant at his yard sale and again offered to sell him food stamps. After negotiation, defendant agreed to purchase Dale's $870 worth of food stamps for $140.

Defendant's version of the facts was essentially the same. Defendant enjoyed bartering with the people who visited his yard sale. To him it was an attractive challenge to con Dale into selling the food stamps for a small fraction of their value, and it was only because Dale agreed to such a low price that defendant agreed to buy them.

■ In Illinois, entrapment occurs when the criminal design originates with the State officers who implant in the mind of an innocent person the disposition to commit the alleged offense and who induce its commission in order that they may prosecute. The principal element of the defense of entrapment is the defendant's lack of disposition to commit the crime. The fact the State's officers or employees merely afford opportunities or facilities for the commission of an offense does not defeat the prosecution and the State's deception brings the defense of entrapment into play only when the deception actually implants the criminal design in the defendant's mind. Ill. Rev. Stat. 1983, ch. 38, par. 7—12; *People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812.

■ The question involves two issues, inducement and predisposition, and the defendant has the burden of proving that the State induced him to commit a criminal act; if he so proves, then the burden

is on the State to prove the defendant was ready and willing to commit the crime without persuasion, that is, that he had a predisposition to commit the crime (Ill. Rev. Stat. 1983, ch. 38, par. 3—2).

We conclude from the evidence that entrapment was established as a matter of law. In so holding we are not choosing between conflicting witnesses or judging credibility. The evidence is simply insufficient to support a finding of predisposition on the part of the defendant.

It is clear the defendant was induced by Dale. Without basis for suspecting the defendant, Dale suggested committing the crime, provided the necessary stamps, and agreed to sell them to defendant for a price seven times below their cash value. Dale initiated both the conversations and the negotiations. Defendant testified he had never in any capacity accepted food stamps before and Dale testified neither he nor the police department had any evidence of any kind that defendant was a suspect in this case or had a prior history of purchasing food stamps. Human nature is weak enough and sufficiently beset by temptations without the State adding to them and generating crime.

This does not mean the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime and through self-struggle resist ordinary temptations.

The State sought to overcome the defense of entrapment by claiming defendant evinced an "active and unhesitating" compliance to accede to Dale's request. Aside from Dale's testimony showing defendant a "willing and active participant who set the standards of negotiating", the State's case is unsupported. There is no evidence defendant was predisposed to commit crime. There is no evidence the defendant had ever previously been connected with illegal food stamp transactions. Defendant had no previous criminal record. The State's characterization of defendant's active negotiations as hardly acts of an "innocent" person cannot fill the evidentiary void.

Also relevant and particularly reprehensible in the present case was the testimony of a prosecution witness that, according to reports, army surplus material was suspected to have earlier been purchased at defendant's location for food stamps. Even though objection was made and sustained after a bench conference outside the jury, the testimony by Officer Nixon could well have prejudiced defendant's en-

trapment defense and the instruction to the jury to disregard the testimony only questionably cured the error. It is well established evidence of the commission of other crimes, wrongs or acts by a defendant is inadmissible for the purpose of showing disposition or propensity to commit crimes, thus suggesting the inference that defendant therefore committed the crime in question. (*People v. Babtist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200). The underlying rationale is that such evidence is objectionable "not because it has no appreciable probative value, but because it has too much." 1 Wigmore, Evidence sec. 194 (3d ed. 1983), quoted in *People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288.

For these reasons the judgment of the circuit court of Rock Island County is reversed.

Reversed.

SCOTT, P.J., and BARRY, J., concur.