THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES BLAND, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2401

Opinion filed April 15, 1992.

Marc Davidson, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Judith M. Pietrucha, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, James Bland, was convicted of attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1), two counts of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4), aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(3)), and aggravated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3.1). Defendant was sentenced to extended terms of 40 years' imprisonment for the attempted murder, 30 years' imprisonment for the aggravated kidnapping, and 10 years' imprisonment for the aggravated battery. Defendant argues on appeal that (1) the trial court erred in giving an attempted murder instruction that allowed the jury

to find him guilty of attempted murder without finding that he acted with the specific intent to kill; (2) the trial court denied him his sixth amendment right to confront and cross-examine witnesses by precluding him from fully cross-examining the victim; (3) the trial court erred by failing to appoint substitute counsel to argue his post-trial motion, which was based on the ineffectiveness of trial counsel; (4) his convictions for two counts of aggravated battery must be vacated because they are either lesser included offenses of, or arise out of the same acts as, his attempted murder conviction; and (5) the extended-term sentence for aggravated kidnapping and aggravated battery must be vacated.

On September 27, 1986, the victim was hospitalized after sustaining injuries she received in an encounter with defendant. Based on that incident, defendant was charged with attempted murder, aggravated criminal sexual assault, aggravated kidnapping, aggravated battery, and aggravated unlawful restraint.

At trial, the victim testified that she and her husband had coffee in a restaurant in the early morning hours of September 27, 1986. Her husband left the restaurant first, and she followed five minutes later. She further testified that a car pulled up alongside her as she was walking home. The driver asked if she knew where a gas station was. The victim gave him directions, but he pulled up again, slid over to the passenger's side, and told her that he did not hear her. After looking at her husband turn the corner about a block ahead, she leaned toward defendant to repeat herself. As she did so, defendant grabbed her throat and hair, and pulled her through the open window of the car, holding her face down on the seat so that she could not scream. A struggle ensued.

The victim also testified that during the struggle, defendant told her that they were "going to have some fun and that she would not be able to tell anyone what happened because he was going to throw her in the lake where no one would find her." The struggle continued, and when they passed two police cars sitting in a McDonald's parking lot, she screamed for help. Shortly afterward, defendant parked the car, and the victim opened the car door. Defendant pulled her back in, punching her, and said that they were going to have their fun now. The victim said that defendant then unzipped his pants and exposed his penis, pushing her face and mouth down on it. She started to choke and bit his penis. He pulled her head up and they continued to fight. At one point, she grabbed the keys out of the ignition and threw them toward the driver's door. While fighting, they both fell out of the car and onto the grass. Defendant continued to punch her

and then kicked her in the side of the face and back. The victim was screaming, and she bit defendant's hand.

The two continued to fight. The victim then played dead, and defendant went back to the car. The victim got up and ran to a nearby house, beating on the door, screaming for help. She heard a noise behind her. When she turned around, defendant was standing there, laughing at her. He told her it was time to finish and that she was not going to be able to tell anyone who did it. Defendant hit the victim in the head twice with a tire iron, and she lost consciousness.

Later that day, two police officers visited the victim in the hospital. She admitted that she did not tell them about the sexual assault. While in the hospital, the victim identified defendant from a photo lineup. Later, the victim told police officers that she bit defendant's penis after he unzipped his pants and tried to shove her mouth down on it.

The victim also testified that two weeks before this incident, she was convicted of delivery of a controlled substance and received a sentence of 30 months' probation. On cross-examination, the trial court refused to allow the defense attorney to inquire about the victim's November 1987 arrest for soliciting a ride and the State's subsequent dropping of that charge and a related violation of probation charge. That arrest occurred after the incident, but before trial.

An eyewitness, Susan Paton, testified that on September 27, 1986, between 3 a.m. and 4 a.m., she looked out her window after hearing the victim scream for help. She saw a man and woman arguing and fighting at the corner. She then observed the man strike the woman, but did not see if anything was in the man's hand. Ms. Paton then called the police.

Officer Richard Trojanek testified that when he arrived at the scene at about 4 a.m., he heard screaming. He saw a man, holding a stick-type object, get up from the ground where the woman was lying. The victim's hair, face, and chest were covered with blood, and her jeans were pulled down below her knees. She was moaning hysterically for help. Other police officers testified that they found the car at the scene with the keys still in the ignition, and that the victim was beaten badly, covered with blood.

The victim's family doctor testified that she went to the hospital on the evening of September 27, 1986. The victim had a laceration on the right side of her head. The doctor did not treat the victim at that time because the wound had already been sutured at another hospital. A week later, however, the doctor removed 52 stitches from the victim's wound. The doctor also testified that, based on her review of

the radiologist's report, the victim had suffered a fracture of the right side of her skull.

Officers Dan Wolff and David Hartman testified for the defense. Officer Wolff stated that he interviewed the victim twice on September 27, 1986. She did not say anything about a sexual assault. Officer Hartman testified that he interviewed the victim on December 5, 1986. At that time, the victim stated that she bit defendant's penis as he was trying to push her head onto it, but not that she had the penis in her mouth before biting him.

Defendant testified that, after drinking all night, he was driving home in the early morning of September 27, 1986, when he saw a man and woman fighting. Defendant stated that he stopped the car, and the woman began walking toward him. As she approached, defendant leaned toward the window and asked her if she was all right. The victim, whose eyes were red and puffy, said nothing, but entered the car. After defendant drove a couple of blocks, the victim asked him where he lived, told him that she was a "whore," and offered sex for $30. Defendant stated that he pulled the car over and ordered the victim out of the car. She refused and slid next to him, again offering to have sex. She took his right hand and tried to put it on her breast and then grabbed his genitals with her right hand. Defendant testified that he shoved her away and again ordered her out of the car.

Defendant further stated that the victim refused to move. Defendant started to open his car door, and the victim stabbed him in the middle of his back. Then, defendant hit her a few times, leaned over, opened the passenger door, and pushed her out of the car. As he started to drive off, he realized that her feet were still in the car so he stopped the car, went around to the passenger side, pulled her out of the car, and placed her on the ground. As defendant walked back to the car, the victim kicked him. She then got up, came at him, called him names, and pushed him. A fight began. At one point, defendant, wearing gym shoes, kicked her in the head and the side. He denied, however, hitting her with a tire iron. Defendant started toward his car, but ran when he saw the police coming.

On cross-examination, defendant claimed that the incident occurred in the grass next to the street. He did not remember the patio area where the victim was found. He also testified that he never heard the victim call for help or moan, and did not see any blood. Further, defendant stated that he never sought medical help for his stab wound.

Prior to closing argument, the defense counsel objected to the attempted murder instruction. According to the certified court transcript, the trial court gave instructions on the offense of attempt, and then instructed the jury that the offense of murder can be committed when a person intends to kill or to do great bodily harm.

The jury found defendant guilty of attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1), two counts of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4), aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(3)), and aggravated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3.1). He was found not guilty of the aggravated criminal sexual assault charges. Ill. Rev. Stat. 1985, ch. 38, par. 12—14.

Both the defense counsel and defendant filed motions for a new trial. Among the allegations in defendant's *pro se* motions were the ineffective assistance of counsel and a request for a new attorney. The court denied both motions. Defendant was then sentenced to an extended term of 40 years' imprisonment for attempted murder based on exceptionally brutal and heinous behavior indicative of wanton cruelty. In addition, he was sentenced to extended terms of 30 years' imprisonment for aggravated kidnapping, and 10 years' imprisonment for aggravated battery.

Defendant asserts on appeal that the trial court's instruction on attempted murder improperly allowed the jury to find him guilty of attempted murder without finding that he acted with the specific intent to kill. Instead, he argues, the jury was allowed to convict him of attempted murder with a finding that he intended to do great bodily harm. The certified court transcript indicates that the jury was given a three-part instruction. First, the trial court defined "attempt" as it related to the underlying felony of murder:

> "A person commits the offense of attempt when he, with intent to commit the offense of murder, does any act which constitutes a substantial step toward the commission of the offense of murder."

After giving this instruction, the trial court set forth the necessary elements of attempted murder:

> "To sustain the charge of attempt, the State must prove the following propositions:
>
> *First:* That the defendant performed an act which constituted a substantial step toward the commission of the offense of murder; and
>
> *Second:* That the defendant did so with intent to commit the offense of murder."

Finally, the trial court defined the crime of murder, stating:

> "A person commits the offense of murder when he kills an individual, if, in performing the act which causes the death, he intends to kill or do great bodily harm to that individual or another."

The Illinois Supreme Court has repeatedly held that a finding of specific intent to kill is required for a conviction of attempted murder. (*People v. Jones* (1979), 81 Ill. 2d 1, 9; *People v. Harris* (1978), 72 Ill. 2d 16, 27.) The jury instructions must unambiguously reflect that specific intent to kill is required and that intent to do great bodily harm is not enough. (*Jones*, 81 Ill. 2d at 8-9.) Improper instructions on the elements of the offense charged denies a defendant a fair and impartial trial. *People v. Reddick* (1988), 123 Ill. 2d 184, 198.

██ The State's argument that the correct instruction was given to the jury is without merit. The State asserts that the certified court transcription is incorrect and the instructions that are separately included in the record are correct. It does not, however, present any evidence that the trial transcript is incorrect. There is no evidence that the common law record includes actual instructions given to the jury. There are a number of instructions missing, including two attempt instructions, a credibility instruction, and an instruction concerning the "substantial step" element in the offense of attempt. These omissions indicate that the written instructions in the common law record were not the actual ones submitted to the jury. In addition, photocopies of the signed verdict forms, not the originals, are included in the common law record.

A reviewing court is bound by the certified record of proceedings in the trial court, and the record is presumed to be correct unless it can be shown to be otherwise. (*People v. Allen* (1985), 109 Ill. 2d 177; *People v. Vincent* (1988), 165 Ill. App. 3d 1023, 1028.) In *Vincent*, the trial transcript indicated that the trial judge misstated the law when reading the voluntary manslaughter instruction, yet the court file contained a correct written instruction. The appellate court reversed the conviction, ruling that the mere fact that a correct jury instruction was found in the court file did not prove that the jury was so instructed. *Vincent*, 165 Ill. App. 3d at 1030.

The State further asserts that the prosecution never argued to the jury that anything less than an intent to kill was necessary to convict defendant. The trial transcript, however, shows differently. In its closing argument, the State told the jury that to prove the charge of attempted murder, the State had to prove that defendant intended to commit the offense of murder. Also, in the portion of the State's clos-

ing argument concerning the other offenses charged, the prosecution explained that it had to prove that defendant intended to commit great bodily harm. Not once did the State explain that the intent necessary to convict for attempted murder was the intent to kill.

The State's argument that defendant failed to raise the instruction error in his post-trial motion for a new trial is without merit since the defense counsel's post-trial motion for a new trial did raise the issue.

Defendant further contends that the instructional error is not harmless because his intent was at issue. His defense was that he wanted to harm the victim in response to her solicitation of sex and the knife attack, but that he did not intend to kill her. While the failure to give the proper attempted murder instruction can be deemed harmless where the defendant's intent to kill is not at issue (*Jones*, 81 Ill. 2d at 9), it is reversible error when the defendant's intent is at issue. (*People v. Gentry* (1987), 157 Ill. App. 3d 899, 905.) Proof of defendant's guilt for attempted murder was predicated on proving the requisite mental state. It was a fundamental error when the trial court gave the jury the incorrect definitional murder instruction, which stated that the intent necessary for murder was either the intent to kill or to do great bodily harm. Consequently, defendant's conviction for attempted murder is reversed and remanded for a new trial.

Defendant next contends that his sixth amendment right to confront and cross-examine witnesses was denied because he was not allowed to cross-examine the victim about her November 1987 arrest for soliciting a ride and the State's subsequent dropping of those charges and a related violation of probation charge.

The State argues that this issue is waived because, even though the defense counsel raised it at trial, he did not get a court ruling and abandoned that line of questioning. The trial transcript indicates otherwise. The court did rule on the defense counsel's request by telling him that he could not ask about the arrest.

The sixth amendment to the United States Constitution protects the defendant's right of cross-examination. (*Davis v. Alaska* (1974), 415 U.S. 308, 315-16, 39 L. Ed. 2d 347, 353, 94 S. Ct. 1105, 1110.) The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. (*Davis*, 415 U.S. at 316-17, 39 L. Ed. 2d at 353-54, 94 S. Ct. at 1110-11.) While the scope of the cross-examination rests largely in the discretion of the trial court (*People v. Owens* (1984), 102 Ill. 2d 88, 103), that discretion must be exercised in such a way as to allow

the defendant wide latitude in establishing bias, motive or interest by the witness. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 156; *People v. Adams* (1984), 129 Ill. App. 3d 202, 208; *People v. Pizzi* (1981), 94 Ill. App. 3d 415, 420.) The fact that a witness has been arrested or charged with an offense may be inquired into to show that her testimony might be influenced by bias, interest, or a motive to testify falsely. (*Adams*, 129 Ill. App. 3d at 207.) In *Adams*, the appellate court rejected the State's argument that the defense counsel was on a fishing expedition and had no factual basis for the inquiry it sought to make. The court ruled that it was error for the cross-examination to have been so restricted that the defense was unable to explore the possibility that the witness may have been biased or be testifying falsely. The defense wanted to ask the witness whether he had been arrested or charged with the crimes. *Adams*, 129 Ill. App. 3d at 207.

The defense counsel is not required to show beforehand that any promises of leniency have been made or any expectations of special favor exist in the mind of the witness. Defense counsel is entitled to inquire into such promises or expectations whether based on fact or imaginary. (*People v. Freeman* (1981), 100 Ill. App. 3d 478, 481.) In *Freeman*, the defendant was allowed only to inquire whether the witness had been promised anything in return for his testimony, but not to probe deeper. The court rejected the State's argument that the defendant must establish that the State had a deal with the witness before a more thorough cross-examination could be permitted. (*Freeman*, 100 Ill. App. 3d at 481.) Here, as in *Freeman*, the trial court erred by not allowing the defense counsel to inquire more fully into the victim's possible bias, motive or interest in falsely testifying. The victim's November 1987 arrest for soliciting a ride, the subsequent violation of probation charge, and the dropping of both charges could have provided a motive to testify falsely if she believed that the charges would be reinstated if she did not testify as the State wanted her to testify. Defendant had a right to explore that possibility.

When a trial error affects a Federal constitutional right, it is reversible error unless it is harmless beyond a reasonable doubt. (*Owens*, 102 Ill. 2d at 104; *Freeman*, 100 Ill. App. 3d at 481.) In determining whether the error was harmless, the sufficiency of the evidence proving guilt beyond a reasonable doubt must be considered. *Pizzi*, 94 Ill. App. 3d at 421.

Although the trial court erred in not allowing the defense counsel to inquire fully into the victim's possible bias, motive or interest in falsely testifying, it was not reversible error. There was overwhelming evidence of defendant's beating the victim and the resulting injuries.

There was testimony from an eyewitness as well as the victim about the attack. Defendant did not claim self-defense. Therefore, the trial court's error was harmless beyond a reasonable doubt.

Defendant next asserts that the trial court erred by failing to appoint substitute counsel to argue his post-trial motion for a new trial based on the ineffectiveness of trial counsel. Defendant made two *pro se* post-trial motions for a new attorney and for a new trial partially based on the ineffective assistance of counsel. Defendant argued in his post-trial motions that his retained counsel was incompetent because he failed to properly investigate and find a potential witness, who would have testified that the victim was a known prostitute. Defendant contends that the beating occurred because the victim propositioned him in his car and stabbed him in the back when he rejected her offer. The trial court denied both motions.

Defendant relies on *People v. Krankel* (1984), 102 Ill. 2d 181, 189, to support his argument that failure of the trial court to appoint new counsel to argue his post-trial motion should result in reversal of the denial of a new trial. As both parties point out, *Krankel* does not establish a *per se* rule. The ultimate focus of the trial court's inquiry must be on the underlying conduct alleged to have prejudiced the defendant. (*People v. Jameson* (1987), 155 Ill. App. 3d 650, 663.) If the claim involves trial tactics or strategy, the claim is spurious and the request for new counsel should be denied. If, however, the factual matters show possible neglect of the defendant's case, the court should appoint new counsel. (*People v. Jackson* (1985), 131 Ill. App. 3d 128, 139.) In *Jackson*, where the defense counsel was retained, the court ruled that no new counsel was necessary. (131 Ill. App. 3d at 140.) The defendant in that case argued that his attorney did not call an alibi witness to testify. The court stated that the defendant's claims made no difference in the trial's outcome. Even if the witness testified to the defendant's whereabouts on the day of the incident and that the defendant could not have physically lifted a television set, there was no set time the crime was committed and there was evidence that the defendant had an accomplice.

■ Similarly, in this case, any failure to locate the witness and have her testify did not prejudice defendant. Even if there had been testimony that the victim was a prostitute, that was not a defense to the offenses. Because defendant's claim goes to the matters of trial tactics and strategy, his claims were spurious and the trial court properly denied his post-trial motions based on ineffective assistance of counsel.

■ The defendant then asserts that his aggravated battery convictions must be vacated because they are either the lesser included offenses of his attempted murder conviction or arise out of the same physical acts as the attempted murder conviction. The State concedes this issue. Aggravated battery is a lesser included offense of attempted murder when it is based on the same act. (*People v. Gvojic* (1987), 160 Ill. App. 3d 1060.) Therefore, if defendant is convicted of attempted murder on retrial, the aggravated battery convictions must be vacated. If defendant is not convicted of attempted murder on retrial, he should be resentenced on the aggravated battery convictions.

■ Finally, the defendant argues that his extended-term sentences for the offenses of aggravated kidnapping and aggravated battery must be vacated. The State also concedes this issue. An extended-term sentence can only be imposed for the most serious class of felony for which the defendant is convicted. (*People v. Jordan* (1984), 103 Ill. 2d 192; Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a).) Here, the most serious class of felony is attempted murder, which is a Class X felony. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 8—4(c)(1).) Aggravated kidnapping is a Class 1 felony. (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(b)(2).) Aggravated battery is a Class 3 felony. (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(e).) Therefore, if defendant is convicted of attempted murder on retrial, the extended-term sentences for aggravated kidnapping and aggravated battery must be vacated and defendant resentenced only on the aggravated kidnapping conviction. If defendant is not again convicted of attempted murder, however, he must be resentenced on the aggravated kidnapping and aggravated battery convictions.

Based on the foregoing, defendant's attempted murder conviction is reversed and remanded for a new trial with instructions.

Reversed and remanded.

RIZZI and WHITE,* JJ., concur.

---

*Justice White concurred with the decision prior to his retirement.