THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALBERT KULWIN, Defendant-Appellant.

First District (3rd Division)   No. 1—88—1102

Opinion filed April 22, 1992.

Patrick A. Tuite and John L. Hines, Jr., both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:
Defendant Albert Kulwin was convicted of delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)) and possession of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(d)) in a jury trial and sentenced to concurrent terms of six years', four years' and two years' imprisonment. On appeal, defendant contends that (1) the State failed to prove beyond a reasonable doubt that he was not entrapped into possessing and delivering cocaine; (2) the trial court improperly restricted defense counsel's cross-examination of the undercover agent on matters relating to his relationship and conversations with an informer; (3) the trial court improperly excluded evidence of the informer's prior drug trafficking conviction and plea negotiation; (4) the prosecutor improperly commented during closing arguments about defense counsel's failure to call the informer as a witness; and (5) the sentence imposed by the trial court on the cannabis charge should be vacated or reduced. We affirm in part, reverse in part, vacate in part and remand.

Defendant frequented Bumpkin's Restaurant in Skokie, Illinois. He became friendly with the owner of the restaurant, William Fautsch, who unbeknownst to defendant, was a narcotics trafficker who previously had drug charges pending against him reduced in exchange for his future cooperation as an informant for law enforcement officials. Defendant had incurred debts approximating $20,000 and was unsuccessful in obtaining loans from his family and three financial institutions. Defendant confided to Fautsch about his financial predicament and had asked Fautsch on several occasions if he could borrow money in order to prevent the foreclosure of his home. Fautsch told defendant that he was not in the business of

lending money, but suggested to defendant that he could obtain the money he needed by selling cocaine.

Fautsch put defendant in contact with Caeser Velazquez, an undercover officer with the Northeast Metropolitan Enforcement Group, an elite narcotics crime-fighting group comprised of police officers from suburban Cook County police departments. On July 31, 1986, defendant and Velazquez met at the Holiday Mart Plaza in Chicago, Illinois, to discuss the possibility of defendant supplying cocaine to Velazquez. On August 11, 1986, defendant agreed to meet Velazquez at the Bunny Hutch Restaurant in Lincolnwood, Illinois, in order to consummate a drug deal. Defendant picked up four packages of cocaine from Fautsch and drove to the Bunny Hutch Restaurant. In the restaurant parking lot, Velazquez approached defendant's car and the men had a brief conversation. Defendant then sold Velazquez the cocaine. Immediately thereafter, defendant was arrested and taken into custody. A search of defendant's automobile recovered 126.6 grams of cocaine, 54.35 grams of marijuana and a vial for inhaling cocaine.

Defendant was convicted of delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)) and possession of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(d)), and was sentenced to concurrent terms of six years' imprisonment on the delivery charge, four years' imprisonment on the possession with intent to deliver charge and two years' imprisonment for possession of cannabis. This appeal followed.

Defendant argues that the State failed to prove beyond a reasonable doubt that he was not entrapped into possessing and delivering cocaine. We agree.

■ The affirmative defense of entrapment is available to a defendant who is induced by the State to commit a crime which he was not predisposed to commit. Section 7—12 of the Criminal Code of 1961 states:

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated." (Ill. Rev. Stat. 1985, ch. 38, par. 7—12.)

Thus, in order for the defense of entrapment to be available to a defendant, the idea to commit the crime must not originate with the defendant, government agents must actively encourage the defendant to act, the purpose of the encouragement must be for evidence to prosecute the defendant, and the defendant must not be independently predisposed to commit the crime prior to first being approached by government agents. Ill. Rev. Stat. 1985, ch. 38, par. 7—12; *Jacobson v. United States* (1992), 503 U.S. ___, ___, 118 L. Ed. 2d 174, 184, 112 S. Ct. 1535, 1540; *Sorrells v. United States* (1932), 287 U.S. 435, 451, 77 L. Ed. 413, 422, 53 S. Ct. 210, 216.

■■ ■ Factors to be considered when determining whether a defendant had the predisposition to commit a crime include: (1) the character or reputation of the defendant; (2) whether the suggested criminal activity was made by the government or its informants; (3) whether the defendant had previously been engaged in criminal activity for profit; (4) whether the defendant expressed reluctance to commit the offense, which was overcome only by repeated persuasion; (5) the nature of the inducement or persuasion applied by the government; (6) the defendant's ready access to a source or supply of drugs; and (7) the defendant's previous criminal record. (*People v. Perez* (1991), 209 Ill. App. 3d 457, 467-68, 568 N.E.2d 250, 256-57.) Once a defendant raises entrapment as an affirmative defense and presents some evidence thereon, the State is required to prove, in addition to each of the statutory elements of an offense, the absence of entrapment beyond a reasonable doubt. Ill. Rev. Stat. 1985, ch. 38, par. 3—2; *People v. Aguilar* (1991), 218 Ill. App. 3d 1, 7, 578 N.E.2d 109, 113.

After viewing the evidence in a light most favorable to the prosecution, we hold as a matter of law that the State failed to prove beyond a reasonable doubt that defendant was predisposed to commit the crimes for which he was convicted. Defendant, by virtue of his financial condition, was particularly susceptible to the State's inducement. Defendant had incurred debts approximating $20,000, including over $12,000 seriously past due on the mortgage to his home. Defendant asked Fautsch, his supposed friend, if he could borrow money to prevent the foreclosure of his home. Fautsch, knowing of defendant's financial plight, refused to lend him money, but suggested that defendant deal drugs in order to make "a lot of fast money." Defendant did not initiate the reference to drugs or dealing in drugs. Fautsch initiated defendant's contact with Agent Velazquez and eventually supplied the cocaine which defendant was convicted of delivering and possessing. The cocaine which defendant

was convicted of possessing and delivering belonged to the government.

■ The record demonstrates defendant's continued unwillingness to engage in this criminal activity. He finally acquiesced, however, to the State's repeated and persistent inducement from both Fautsch and Velazquez to consummate the drug deal. (See *People v. Poulos* (1990), 196 Ill. App. 3d 653, 554 N.E.2d 448; see also *United States v. Reynoso-Ulloa* (9th Cir. 1977), 548 F.2d 1329, 1336 ("[T]he most important factor *** is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducement").) Defendant had not previously been engaged in criminal activity for profit and had never been convicted of a crime prior to the offense in question. See *People v. Boalbey* (1986), 143 Ill. App. 3d 362, 493 N.E.2d 369.

Defendant here was coaxed by duplicitous government agents, who persuaded him with full knowledge and awareness of his financial misfortune to engage in a crime which he was not independently predisposed to commit prior to first being approached by Fautsch. While we recognize the necessity for the use of aggressive tactics by law enforcement officials in order to eliminate the drug scourge that is crippling this nation, we must conclude in the present case that the State failed to prove beyond a reasonable doubt that defendant was not entrapped by the State to engage in the illegal activity for which he was convicted. Accordingly, defendant's convictions for delivery of a controlled substance and possession of a controlled substance with intent to deliver must be reversed.

■ Defendant next argues that the sentence imposed by the trial court on the cannabis charge should be vacated or reduced. Defendant was convicted by the jury of possession of cannabis. (Ill. Rev. Stat. 1985, ch. 56½, par. 704(d).) The trial court's order of sentence and commitment, however, reflects a sentence of two years' imprisonment based on a conviction for possession of cannabis with intent to deliver. Thus, defendant was sentenced for a crime for which he was not convicted.

Under the circumstances, we do not address the remaining arguments made by defendant. Accordingly, the convictions for delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)) are reversed. The conviction for possession of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(d)) is affirmed. The sentence for possession of canna-

bis is vacated. The case is remanded for a new sentencing hearing consistent with what is stated herein.

Affirmed in part; reversed in part; vacated in part and remanded.

GREIMAN,* P.J., and TULLY, J., concur.

---

*Justice White heard oral arguments in this case prior to his retirement; Justice Freeman heard oral arguments in this case prior to his election to the Illinois Supreme Court. Justices Greiman and Tully were the designated members of the panel and have read the briefs and listened to the tapes.