THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SERVIO COLANO, Defendant-Appellant.

Second District No. 2—90—0862

Opinion filed July 9, 1992.

G. Joseph Weller and Sherry R. Silvern, both of State Appellate Defender's Office, of Elgin, and Dennis M. Zitzer, of Chicago, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

A jury convicted the defendant, Servio Colano, of two counts of unlawful delivery of more than 15 grams but less than 100 grams of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(1)). He was sentenced to serve eight years in prison. The defendant presented an entrapment defense and asserts on appeal that the State failed to prove beyond a reasonable doubt that he was not entrapped.

In March 1989, police officer Michael Kijowski, of the North Central Narcotics Task Force, started working with Dimitria Stankovich (the informant). She was paid for her cooperation. Officer Kijowski testified that on March 21, 1990, he met the informant at her home. There were surveillance officers stationed near the residence on the street. Officer Kijowski testified that he requested that the informant call the defendant. Approximately one hour later, the defendant arrived at the informant's residence.

The officer testified that he had a conversation with the defendant regarding the purchase of an ounce of cocaine. He also stated that the defendant asked for $950 for the cocaine and said that it was in a box outside of the house. The officer expressed concern about giving the money to the defendant without receiving the cocaine first. The officer further testified that the defendant insisted that they conduct the drug transaction as he suggested because he feared the buyer might be a police officer.

According to the officer, the defendant then walked to the defendant's car and pointed to a white box between the curb and the passenger side of the car. He explained that the cocaine was in the box and

could be retrieved after he drove away. The officer gave the money to the defendant, and he retrieved the white box. Inside the box, the officer found a clear baggie containing white powder. A field test indicated that it contained cocaine. None of the surveillance officers testified as to seeing the defendant actually place the box on the street.

Officer Kijowski also testified that on March 28, 1989, pursuant to his instructions, the informant set up another drug transaction with the defendant. He again went to the home of the informant. The informant and the officer talked to the defendant on the telephone. Again, the defendant insisted on being paid before he would disclose the location of the cocaine he had for sale. The defendant came to the informant's residence, took $950 from the officer, and told him that he would let him know later where the drugs were. The defendant left but later telephoned the officer at the informant's home and described a location where the drugs could be found in a glove. The officer and the informant drove to the location described by the defendant and retrieved the glove. Inside the glove was a baggie containing white powder. A field test of that powder indicated that it contained cocaine.

The officer also testified that on June 13, 1989, he met with the informant and gave her $200 to purchase cocaine from the defendant. The officer and the informant drove in separate cars to a restaurant parking lot. The officer stated that he observed the defendant approach the informant's car and engage in a conversation with her. Shortly thereafter, he observed the informant and the defendant exchange something with their hands. The officer stated that he then met the informant, who gave him a small baggie holding a substance that field-tested positive for cocaine.

Officer Thomas Petersik of the Illinois State Police testified that on June 14, 1989, he met with the informant and gave her $150 to purchase cocaine from the defendant. That evening, he observed the informant and the defendant meet at a warehouse. He stated that they entered the warehouse and after a short period of time they returned to their respective cars. When he met the informant shortly thereafter, she gave him a baggie containing a white powder which field-tested positive for cocaine.

The defendant testified on his own behalf. He testified that he knew the informant since November 1988 and that they had dated for three or four months. He testified that she told him that she owed a friend $1,500 and requested that he help her repay the money by helping her sell cocaine. He testified that he refused initially but, after several pleas on her part, he finally agreed. He also testified that

during the third week of March 1989 he had sex with her and slept several nights at her residence. He further stated that in the March 21 drug transaction the informant told him where the box containing drugs was. He merely took the money from the officer and showed the officer the location of the box described to him by the informant. He testified that he returned later that evening and gave the money to the informant.

Concerning the March 28, 1989, transaction, the defendant testified that he again refused several times to help the informant. After the informant insisted she needed to pay a debt and that she needed the money for her daughter, he reluctantly agreed. He further testified that she hid the cocaine in a glove and told him where the drugs would be. He stated that when he received a phone call from her, he went to her house, collected the money for her and told the officer where the drugs could be found. The defendant also testified that he spent that night at the informant's home and gave her the drug money. He admitted to seeing the informant on June 13 and June 14, 1989, but denied giving her any cocaine on those dates.

The informant testified that she met the defendant in November 1988, but she denied ever dating him, denied that she allowed him to stay at her residence, and denied ever having sex with him. She also denied telling him that she owed $1,500, denied that she begged him to help her with a drug transaction, and denied receiving any money from him for the cocaine sales. She also stated that she did not place any cocaine in the box on March 21 and did not tell the defendant that she was going to place cocaine in a glove and hide it. She also testified that on June 13 and June 14, 1989, pursuant to instructions from the narcotic officers, she purchased cocaine from the defendant.

On appeal, the essence of the defendant's entrapment claim is that the informant used sex and pleas concerning her daughter to induce him to act on her behalf to take money for drug sales which she had already arranged. The defendant also notes discrepancies in the informant's testimony, arguing that her testimony carried little credibility.

The defense of entrapment is an affirmative defense, and once the defendant presents some evidence to raise the issue of entrapment, the State bears the burden of proving beyond a reasonable doubt that the defendant was not entrapped. (*People v. D'Angelo* (1992), 223 Ill. App. 3d 754, 773-74.) In arguing that the State failed to prove beyond a reasonable doubt that he was not entrapped, the defendant cites to *People v. Johnson* (1984), 123 Ill. App. 3d 363, for the proposition that a reviewing court is to consider all of the defend-

ant's testimony regarding entrapment in the light most favorable to him. As authority for that proposition, *Johnson* cites to *People v. Husted* (1981), 97 Ill. App. 3d 160, which in turn cites to *People v. Carpentier* (1974), 20 Ill. App. 3d 1024, where this standard arose.

*Carpentier* dealt with whether a defendant is entitled to a jury instruction on the defense of entrapment. (See *People v. Poulos* (1990), 196 Ill. App. 3d 653, 657.) *Carpentier* did not hold, however, that this rule for construing evidence applies to the determination of whether the State has sustained its burden of proof on entrapment. Under analogous facts, courts in *People v. Poulos* (1990), 196 Ill. App. 3d 653, 657-68, and in *People v. D'Angelo* (1992), 223 Ill. App. 3d 754, 773-74, have rejected the defendant's contention that a reviewing court must view the evidence in a light most favorable to the defendant. Cases following *Carpentier* apparently picked up on the language in *Carpentier* and misstated the standard of review of the entrapment defense. *D'Angelo*, 223 Ill. App. 3d at 774; *cf. Johnson*, 123 Ill. App. 3d at 370; *Husted*, 97 Ill. App. 3d at 171.

The Illinois Supreme Court has held that, in reviewing the sufficiency of the evidence to support a conviction, "all of the evidence is to be considered in the light most favorable to the prosecution." (Emphasis omitted.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) In determining whether the State has sustained its burden of proof with respect to the entrapment defense, "*all* of the evidence must be viewed in the light most favorable to the prosecution." (Emphasis in original.) (*D'Angelo*, 223 Ill. App. 3d at 774.) The question of entrapment is one for the jury, unless the trial or reviewing court can find entrapment as a matter of law. (*People v. Tipton* (1980), 78 Ill. 2d 477, 487.) We therefore must determine whether in the instant case it can be said that the defendant was entrapped as a matter of law, viewing all of the evidence in the light most favorable to the State. See *D'Angelo*, 223 Ill. App. 3d at 774.

■ To support a finding of entrapment, the defendant first must demonstrate that the State induced him to commit a criminal act; if he does so, then the burden is on the State to prove that the defendant was ready and willing to commit the crime without persuasion, that is, that he had a predisposition to commit the crime. (*D'Angelo*, 223 Ill. App. 3d at 774-75.) In narcotics cases, some factors which the courts have considered when making a determination as to predisposition include (1) the defendant's initial reluctance or his ready willingness to commit the crime; (2) the defendant's familiarity with drugs; (3) the defendant's willingness to make a profit from the illegal act;

and (4) whether the defendant engaged in a course of conduct involving similar offenses. See *D'Angelo*, 223 Ill. App. 3d at 776.

In viewing the evidence in this case, we are cognizant that there were discrepancies in the informant's testimony. Where discrepancies exist in the evidence, it is the responsibility of the trier of fact to weigh the credibility of the witnesses and resolve the conflicts and inconsistencies. See *People v. Aguilar* (1991), 218 Ill. App. 3d 1, 8.

■ In the instant case, viewing the testimony in a light most favorable to the State, the defendant's conviction must be affirmed. Officer Kijowski's testimony established that, through his informant, he met with the defendant on two occasions, each time paying him $950. Each time the defendant told him where to find cocaine. Officer Kijowski also testified that the defendant insisted that they do the transactions in this manner because he was afraid that Kijowski might be a police officer. The informant denied that she begged the defendant to sell drugs, denied having sex with him, and denied using the defendant as a conduit to sell drugs. There was also testimony from Officer Petersik and Officer Kijowski that the defendant twice sold cocaine to the informant on June 13 and June 14, 1989.

The testimony of the informant supported the defendant's willingness to enter the drug transactions. The defendant's insistence on collecting the money and telling the officer where to pick up the drugs indicated a familiarity with drugs and drug transactions. Officer Kijowski's testimony established that he paid the defendant $1,900 for the drugs, indicating the defendant's willingness to make a profit from the crime. Testimony of the informant and the other officers indicated that the defendant engaged in other drug transactions on two other occasions. Viewing the evidence in a light most favorable to the State, we find that, if believed by the jury, it was sufficient to prove beyond a reasonable doubt that the defendant was predisposed to commit the charged offenses and, thus, was not entrapped. See *D'Angelo*, 223 Ill. App. 3d at 776.

For the reasons set forth above, the order of the circuit court of Kane County is affirmed.

Affirmed.

DUNN and BOWMAN, JJ., concur.