554

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHARON SAINDON, a/k/a Sharon Griffin, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHARON SAINDON, a/k/a Sharon Griffin, Defendant-Appellant.

Third District   Nos. 3—91—0757, 3—91—0758 cons.

Opinion filed December 23, 1992.

Daniel J. Bute, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet, and Howard R. Wertz, of Lynwood (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Following a bench trial, the defendant, Sharon Saindon a/k/a Sharon Griffin, was convicted of two counts of unlawful delivery of less than 10 grams of a substance containing heroin (Ill. Rev. Stat.

1989, ch. 56½, par. 1401(c)). The defendant was sentenced to a term of 48 months' probation and was ordered to pay a street value fine in the amount of $475.

The sole issue raised by the defendant on appeal is whether the evidence presented by the State was sufficient to rebut her affirmative defense of entrapment. We find the evidence was sufficient and affirm.

At trial, police officer Terry Paggi testified that he was assigned to the Metropolitan Area Narcotics Squad. On January 25, 1990, and again on February 22, 1990, he was working with Robert Gabel, a recovered heroin addict who was assisting the police in exchange for lenient treatment regarding pending felony charges. On both dates, Paggi searched Gabel and then observed Gabel make a telephone call. Shortly after the call was made, Paggi observed the defendant drive to a meeting place arranged with Gabel. Paggi then provided Gabel with the money for a drug purchase. He paid $175 on the first date and $300 on the second. Gabel then went to the defendant's car, gave the defendant the money and, on each date, received from the defendant a silver-foil packet containing a brown powdery substance. The parties entered into a stipulation that the packet received by Gabel on January 25 contained 1.1 grams of a substance containing heroin and the packet received on February 22 contained 3.3 grams of a substance containing heroin. The defendant was arrested following the February 22 transaction.

Gabel's testimony regarding the events of January 25 and February 22 was very consistent with that of Paggi. In addition, Gabel testified that, prior to January 1990, he had been incarcerated in three States following convictions of theft and burglary. In March 1990, after the transactions involving the defendant, Gabel was sentenced to two years' probation for two counts of forgery. Gabel stated that he was a heroin addict but had not used heroin since he was incarcerated in Alaska from the end of 1987 to the end of 1989. Gabel knew the defendant's husband, Charles Griffin, because he had purchased heroin from Griffin prior to his incarceration. Gabel also knew the defendant through her husband.

During cross-examination, Gabel testified that he probably called the defendant about 15 to 20 times between January 25 and February 22. None of the telephone calls were taped. Gabel also admitted, during his testimony in an unrelated case, that he called the defendant's residence 20 to 30 times prior to January 25, at all hours of the day. He denied, however, that the defendant ever said she would not sell him drugs.

The defendant testified that, during January and February 1990, she was using both methadone and heroin. She frequently purchased heroin for her own use and also purchased heroin for her husband. The defendant admitted delivering a mixture of heroin and lactose to Gabel on two occasions. She stated, however, that Gabel began calling her about one week before January 25, 1990. Gabel asked her where he could buy heroin, and she told him the location of her sources. Gabel insisted that he did not want to go to these locations to buy drugs. Thereafter, he began calling her six to seven times a day and asked her to bring him some drugs. Gabel told her that he had someone who would supply the money. Finally, Gabel told her that he was sick and reminded her of their earlier friendship. The defendant finally agreed, after 35 to 40 telephone calls, to sell Gabel some heroin on January 24. She stated that Gabel told her he would leave her alone if she made the delivery. She then purchased heroin for $140, mixed it with lactose, and gave it to Gabel in exchange for $175. The defendant testified that part of the heroin was supposed to be for the man who was supplying the money (Paggi) and part of it was secretly packaged for Gabel's own use.

The defendant testified that Gabel called her again on February 20. He sounded frantic and begged her to sell him more heroin by saying he was sick. The defendant told him she did not have any heroin. Gabel then began calling her about every half-hour to an hour. When Gabel again promised her he would stop bothering her if she made the delivery, the defendant purchased another $140 worth of heroin and mixed it with lactose. She delivered the heroin to Gabel in exchange for $300. The defendant stated that she made a profit on January 25 and expected to make a profit on February 22.

Following this testimony, the trial court concluded the entrapment defense did not apply because the defendant was not "an innocent babe in the woods" and had a predisposition to commit the offenses. The trial court found the defendant guilty of two counts of the unlawful delivery of heroin. The defendant was subsequently sentenced to a term of 48 months' probation.

The defendant's sole argument on appeal is that the State failed to prove her guilty beyond a reasonable doubt because the evidence showed that she was entrapped as a matter of law. The defendant contends that she was entrapped because the idea of committing the offense originated with the State through its agent, Gabel, and because she was essentially badgered into making the deliveries. The defendant also argues the trial court erroneously concluded that she was predisposed to commit the crime because the evidence did not

show that she had ever delivered heroin before she was contacted by Gabel. We find the defendant's arguments are not supported by case law.

██ A defendant may raise the affirmative defense of entrapment when he is induced by the State to commit a crime which he was not predisposed to commit. (*People v. Kulwin* (1992), 229 Ill. App. 3d 36, 38, 593 N.E.2d 717, 719.) Once the defendant presents some evidence to raise this defense, the State bears the burden of proving beyond a reasonable doubt that the defendant was not entrapped. (*People v. Colano* (1992), 231 Ill. App. 3d 345, 348, 596 N.E.2d 195, 197.) The defendant here is essentially arguing that the evidence presented was not sufficient to meet this burden.

When the sufficiency of the evidence is questioned in a criminal case, the test to be employed on review is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) Thus, in determining whether the State has met its burden of proof with respect to the entrapment defense, all of the evidence must be viewed in the light most favorable to the prosecution. (*Colano*, 231 Ill. App. 3d at 349, 596 N.E.2d at 198.) Also, the question of entrapment is one for the trier of fact, unless the reviewing court can find entrapment as a matter of law. See *People v. Tipton* (1980), 78 Ill. 2d 477, 487, 401 N.E.2d 528, 533; *People v. Lambrecht* (1992), 231 Ill. App. 3d 426, 434, 595 N.E.2d 1358, 1364; *People v. DeBeck* (1990), 204 Ill. App. 3d 15, 18, 561 N.E.2d 1081, 1084.

The defense of entrapment is available when: the idea to commit the crime does not originate with the defendant; government agents actively encourage the defendant to act; the purpose of the encouragement is to obtain evidence to prosecute the defendant; *and the defendant is not independently predisposed to commit the crime prior to first being approached by government agents. (Kulwin*, 229 Ill. App. 3d at 39, 593 N.E.2d at 719; see also Ill. Rev. Stat. 1989, ch. 38, par. 7—12; *Jacobson v. United States* (1992), 503 U.S. 540, 548-49, 118 L. Ed. 2d 174, 184, 112 S. Ct. 1535, 1540.) Thus, even if the other prerequisites are present, the defense does *not* apply if the defendant was predisposed to commit the crime. *DeBeck*, 204 Ill. App. 3d at 18, 561 N.E.2d at 1064.

Various factors which courts have considered in narcotics cases when making a determination as to predisposition include: (1) the defendant's initial reluctance or his ready willingness to commit the

crime; (2) the defendant's familiarity with drugs and willingness to accommodate the needs of drug users; (3) the defendant's willingness to make a profit from the illegal act; (4) the defendant's prior or current use of illegal drugs; (5) the defendant's participation in testing or cutting the drugs; (6) the defendant's course of conduct involving similar offenses; and (7) the defendant's ready access to a drug supply. *People v. D'Angelo* (1992), 223 Ill. App. 3d 754, 776, 585 N.E.2d 1239, 1253; see also *People v. Martin* (1991), 219 Ill. App. 3d 1064, 1076, 580 N.E.2d 575, 584.

■ In the instant appeal, after viewing the evidence in the light most favorable to the State, we conclude that the evidence clearly supports the trial court's finding that the defendant was predisposed to commit the crime. The defendant's own testimony was consistent with the majority of the relevant factors we have previously cited. The defendant also testified that she was a drug user and familiar with drugs. Further, she stated that she made a profit on the first sale and expected to make a profit on the second sale. She testified that she cut the heroin she sold to Gabel with a cutting agent, lactose. Her testimony clearly supported a conclusion that she had ready access to a drug supply and engaged in a course of conduct involving similar offenses. Finally, she testified that she frequently purchased heroin for herself and had purchased heroin for the purpose of delivering it to her husband. Because the evidence supports the trial court's finding that the defendant was predisposed to commit the crime, we cannot say as a matter of law that the defendant was entrapped.

Accordingly, we affirm the judgment of the circuit court of Will County.

Affirmed.

BARRY, P.J., and SLATER, J., concur.