# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Ramirez*, 2012 IL App (1st) 093504

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUSTAVO RAMIREZ, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-09-3504 |
| Filed | August 15, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for bribery were upheld over his contentions that the State failed to rebut his affirmative defense of entrapment and that he was prevented from presenting evidence that he never engaged in such conduct in the past; however, one conviction was vacated under the one-act, one-crime doctrine. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-4931; the Hon. Domenica A. Stephenson, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Rebecca I. Levy, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Allan J. Spellberg, John E. Nowak, and Karyn Stratton, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MURPHY delivered the judgment of the court, with opinion. Justices Neville and Salone concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant Gustavo Ramirez was convicted of four counts of bribery, and the trial court sentenced him to 4 terms of 4 years' probation and 40 hours of community service, to be served concurrently. On appeal, defendant contends that the State failed to rebut his affirmative defense of entrapment beyond a reasonable doubt. Defendant also contends that he was denied his right to present a defense where the trial court prevented him from presenting evidence that he had never previously engaged in bribery or a similar type of conduct. Finally, defendant contends that two of his convictions violate the one-act, one-crime doctrine. For the following reasons, we vacate one of defendant's convictions for bribery and affirm in all other respects.

¶ 2                                    BACKGROUND

¶ 3    The State charged defendant with multiple counts of bribery and proceeded to trial on six of those counts based on allegations of conduct that took place on November 16, November 21, December 4, December 15, December 18, and December 19, 2006. The count for November 16 alleged that defendant, with the intent to prevent the demolition of his garage by the City of Chicago (City), promised to buy lunch for Angelina Recendez, a public employee, which she was not authorized by law to accept. The count for November 21 alleged that defendant, with the intent to prevent the demolition of his garage by the City, promised or tendered money to Hector Arellano, a public employee, which he would not be authorized by law to accept. The count for December 4 alleged that defendant, with the intent to prevent the demolition of his garage by the City and to remove building code violation complaints from its records, promised or tendered money and a City of Chicago water department (Water Department) plumbing key to Arellano, which he would not be authorized by law to accept. The counts for December 15 and 18 alleged that defendant, with the intent to influence the removal of building code violation complaints from the City's records, promised or tendered money to Arellano, which he would not be authorized by law to accept. The final count alleged that on December 19 defendant, with the intent to influence the

removal of building code violation complaints from the City's records, promised or tendered a Water Department plumbing key to Arellano, which he would not be authorized by law to accept. Defendant was convicted of the four counts of bribery alleging criminal conduct on December 4, 15, 18, and 19, 2006.

¶ 4        Before the trial, the defense filed a motion to introduce evidence regarding prior criminal conduct by four former employees of the City of Chicago buildings department (Buildings Department). Each of these employees was either a building inspector or supervisor and had been indicted in the United States District Court for the Northern District of Illinois. Defendant asserted that the evidence showing that he did not try to bribe these four employees at any time, despite their predisposition for accepting bribes, was relevant because he was raising an entrapment defense and this evidence would help prove that he was not predisposed to commit bribery. Defendant also alleged that there was no evidence showing that he had engaged in prior conduct involving bribery or any similar offense, had ever paid bribes to maintain his properties in Chicago, or had ever solicited bribes as a public employee for the City. The trial court denied the motion, finding the evidence irrelevant where defendant did not have contact with the Buildings Department employees at issue.

¶ 5        At trial, Angelina Recendez, an administrative assistant for the demolition bureau of the Buildings Department, testified that at about 9:30 a.m. on November 16, 2006, defendant called her office and asked to speak with a supervisor about a property on which he had received a notice of demolition. Recendez told defendant all the supervisors were in a meeting, but that someone would call him back later. Defendant then told Recendez that he had some tacos and would bring them to her or get her "anything she wanted" if she would help him out by deleting his building violations from the computer system, and Recendez responded "no, I can't do that." Defendant then asked Recendez if she had any clout, and when she replied that she did not, he told her that he had "good clout" and could help her out. Recendez testified that her phone conversation with defendant lasted about 20 minutes, and she admitted to having previously testified at an administrative hearing but denied testifying at that hearing that the phone call lasted 30 to 45 minutes. Recendez also testified that she was the only person in the demolition bureau answering phones that day–all the supervisors were in an extended meeting for the day–and she estimated that the bureau receives about 160 calls a day, each of which must be referred to a supervisor.

¶ 6        Recendez further testified that after speaking with defendant, she notified her supervisor and the City of Chicago office of the inspector general (IG) of the call. On November 21, 2006, Recendez went to the IG office and met with two supervisors and Hector Arellano. At 8:45 a.m. that morning, Arellano instructed Recendez to call defendant and Arellano listened in on the call with his ear to the phone as she did so. In that call, Recendez told defendant that she had a friend who was an inspector and could help him with his violations and asked if she could give him defendant's phone number, and defendant acquiesced.

¶ 7        Arellano testified that in November 2006, he was an investigator specialist with the IG and was assigned to work undercover as a Buildings Department inspector in order to investigate defendant after Recendez had reported defendant's phone call to her supervisor. Arellano called defendant at 9:40 a.m. on November 21, 2006, after Recendez had called him, posing as a building inspector. Arellano told defendant that he was from the Buildings

Department and that he would be able to help with defendant's garage problem at 8526 S. Burley. After defendant told Arellano that the garage only needed minor repairs, the two decided to meet at the property at 2 p.m. that day.

¶ 8        When Arellano went to meet defendant, he wore a "Hawk," which is a device that can record audio and video. Arellano only turned on the video function during this first meeting and the State played the video recording of that meeting for the jury while Arellano testified as to the events as they transpired. Arellano testified that when he first arrived at defendant's garage, defendant was accompanied by his handyman, who did not identify himself. The three men then walked to defendant's garage and Arellano told defendant that it was dilapidated and dangerous. The unidentified man asked Arellano what needed to be done to avoid demolition, and Arellano responded that defendant would either need to get permits to demolish the garage or repair it. Then Arellano asked to speak with defendant alone, and they moved about 15 feet away from the unidentified man and toward the front of the property.

¶ 9        Arellano also testified that while they were alone, he told defendant that Recendez had told him that defendant wanted someone to erase his building violations from the computer and that defendant "wanted to do some business." Arellano testified that defendant did not look surprised and did not hesitate before agreeing to "do business." When Arellano told defendant that he could delete the violations, defendant asked how much it would "run" him. Arellano asked defendant what he thought was a fair amount and noted that he would incur labor costs of $2,000 to $3,000 for the City to demolish the building and $250 in fines that had accrued. Defendant suggested he pay Arellano $200, but told Arellano that he only had $60 at that time and would pay the rest at a later date. After paying Arellano, defendant told him that he was a fellow city employee and that he worked for the Water Department. Arellano told defendant that "if he had any other permits or anything he needed to give me a call." The two then shook hands, and Arellano departed.

¶ 10        Arellano further testified that he called defendant on November 29, 2006, to inquire about the remaining $140 of the $200 defendant had promised to pay him for removing the violations from the computer system. Defendant told Arellano that he had left the $140 with his handyman in an envelope and that Arellano had not come to pick it up. Arellano said he had been out of town and defendant agreed to have the money by the next Monday.

¶ 11        On November 30, 2006, Arellano obtained a court order for a consensual overhear, which allowed him to record all future conversations with defendant, whether over the phone or in person. Arellano and defendant met on December 4, 2006, at 3:45 p.m. on the southeast side of Chicago, a block away from Burley Avenue, and the State played an audiovisual recording of their meeting for the jury. The recording showed that defendant got into Arellano's car and put $140 on the passenger seat without any verbal prompting from Arellano. Arellano brought the paperwork for the building at 8526 S. Burley to give to defendant, and defendant asked if he could get a wholesale rate on the next deal because he had other issues with other buildings. Arellano agreed and gave defendant a phone number to call. Arellano then asked defendant if he had any other garage issues, and defendant told him about one with good walls and a bad roof. Arellano asked defendant if he could help out one of his friends whose water had been cut off, and defendant told Arellano that he could get a key his friend could

use to turn the water back on. Defendant said that he would give Arellano the key if Arellano took care of his violations. Arellano told defendant to call him the next day and left.

¶ 12    On December 5, 2006, Arellano and defendant spoke on the phone. A recording of that conversation was played for the jury. The recording showed that defendant gave Arellano the addresses of three of his properties on South Buffalo Avenue that had garage problems. The State next played recordings of phone conversations between defendant and Arellano, which showed that they spoke on the phone and left messages for each other several times between December 7 and 15, 2006, before agreeing to meet on December 15. The recordings also showed that Arellano referenced defendant's approaching administrative hearing on December 22 and said that they needed to meet up soon to take care of it.

¶ 13    On December 15, 2006, defendant and Arellano met for lunch to discuss defendant's other violations and an upcoming hearing for one of them. The recording of that meeting was played for the jury and reflected that defendant told Arellano that there were three properties with violations. When defendant asked how much it would cost to delete the violations from the computer, Arellano said they would cost $50 each and that he would make copies of the paperwork for those three properties. Defendant then told Arellano that he had a big violation that was up for a hearing soon and that he would be willing to pay $150 for Arellano to get rid of it. Arellano told defendant that he would take care of it immediately since there was such a time contingent. Defendant said that he could meet Arellano the following week to pay him half of the $300 he owed him for deleting the violations off the four properties. Arellano then asked if defendant had the water key, and defendant responded that he would pick it up the next day.

¶ 14    Defendant and Arellano met again on December 18, 2006, and the recording from that meeting was played for the jury and showed that defendant gave Arellano $140 of the $150 he owed him and stated that he still owed him "a ten." Although Arellano brought up the water key, defendant did not provide him with it.

¶ 15    Defendant and Arellano spoke again at 12:53 p.m. on December 19, 2006, and the recording of that conversation was played for the jury and showed that defendant told Arellano that he would get that "thing" for Arellano, and Arellano testified that he assumed defendant was talking about the water key. Defendant also mentioned that he needed a porch permit before his next court date on January 3, 2007, but Arellano did not deliver such a permit to defendant. Arellano attempted to again contact defendant on January 9 and 19, 2007, but was unable to reach him. Upon the conclusion of Arellano's testimony, the State rested its case.

¶ 16    The defense then called Kurt Berger as a witness. Berger, a former director of the vacant building program for the Buildings Department, testified that a person has 30 days to repair his or her building after receiving a notice of demolition before it will be torn down by the department of streets and sanitation. Berger also testified that if a property owner wants to save his or her property from demolition, he or she must contact the Buildings Department and speak with a supervisor or inspector within five days of receiving the demolition notice.

¶ 17    The defense next called Carlos Chaparro as a witness. Chaparro testified that defendant had been his landlord for eight years and that he also did some maintenance work for

defendant. Chaparro testified that he was with defendant at his property at 8536 S. Burley on November 21, 2006, when he met with Arellano. Chaparro stayed about 10 or 15 feet away from defendant and Arellano while they discussed the building. Chaparro asked Arellano how long he and defendant had to comply with the demolition notice, and Arellano seemed to find the question funny and did not respond to it. Chaparro also gave defendant some money that day, and although he did not see defendant give that money to anyone else, defendant later told him that he had given it to Arellano. In addition, when asked about defendant's character and reputation in the community, Chaparro testified that he knew 20 to 30 people who knew defendant and that defendant had a reputation for truthfulness, honesty, and good character among them.

¶ 18    Defendant testified that he had worked for the Water Department since October 1988 and that to supplement his income, he also bought property in a neighborhood of Chicago called The Bush, beginning in 1996. By November 2006, defendant owned 18 homes in the neighborhood, many of which he had fixed up over the years. Due to the poor state these properties were in when he bought them, defendant often had contact with the Buildings Department, which issued violations for properties in disrepair. Defendant attended required administrative hearings for the violations and would make the necessary repairs with his handyman, Chaparro. In November 2006, defendant received a demolition notice from the Buildings Department for his garage located at 8526 S. Burley.

¶ 19    Defendant called the Buildings Department at 9:13 a.m. on November 16, 2006, and spoke with Recendez. Defendant explained to Recendez that he had received a demolition notice and asked to speak with a supervisor. Defendant then asked Recendez for the name of an inspector who could look at his property and also said "right now I have tacos, I'll be glad to bring you a taco over if you could review the pictures of the property." Recendez responded that she could not do that, and defendant said "well, you know what, can I have your supervisor, maybe your clout can give me a call and maybe we could settle this; I'm a city worker and I just want to make compliance to my garage." The call then ended, and defendant's phone records indicated that the call lasted for less than a minute. Defendant testified that he did not ask Recendez to delete his violations from the computer system.

¶ 20    On November 21, 2006, defendant received a call from Arellano, who introduced himself as a buildings inspector, and the two agreed to meet later that day at 8526 S. Burley to discuss defendant's garage problem. At the property, defendant spoke with Arellano while away from Chaparro and told Arellano that he could get the garage into compliance to save it from demolition. Arellano responded "I'm here to take care of business; I can make it easy, I can make it hard for you," and said that he could add more violations, that it would cost defendant, and that he needed some money. Arellano also asked for 10% of the $2,000 it would cost for demolition. As Arellano walked away, defendant obtained $60 from Chaparro and put it in his pocket, then later handed that money to Arellano as he was leaving the property. Defendant testified that he only gave money to Arellano because he was worried that Arellano would add more violations and fines to the property if he did not and that he did not have the intention of bribing Arellano to remove violations.

¶ 21    Defendant and Arellano arranged to next meet on December 4, 2006, on the 8500 block of South Burley. During this meeting, defendant got into Arellano's car and Arellano gave

him paperwork for the building violations and told defendant that he could erase the violations from the computer. Defendant then told Arellano that he had other properties that had problems and asked Arellano if he could take care of them at a wholesale rate. Defendant subsequently gave Arellano the $140 he still owed him for the property at 8526 S. Burley and took down Arellano's phone number.

¶ 22    On December 5, 2006, defendant spoke with Arellano and provided him with the addresses of three other buildings that had problems on South Buffalo Avenue. On December 15, 2006, defendant met with Arellano and offered to pay $300 for Arellano to get rid of the violations on four of his properties, with $150 being for one big property violation. Defendant next met with Arellano on December 18, 2006. Defendant handed Arellano $140 when he arrived and they shook hands. Defendant called Arellano around noon on December 19, 2006, and told him that he needed a permit for a small porch, that he had received a violation on that property, and that he would get that "thing" for Arellano, referring to the water key. Defendant further testified that he never received the permit for the porch from Arellano, that he never provided Arellano with the water key, and that he had no more contact with Arellano following December 19, 2006.

¶ 23    Based on the evidence above, the jury found defendant not guilty of the bribery charges alleging criminal conduct on November 16 and 21, 2006, and found him guilty of the bribery charges alleging criminal conduct on December 4, 15, 18, and 19, 2006. The trial court denied defendant's motion for a new trial and sentenced him to four terms of four years' probation and 40 hours of community service, to be served concurrently.

¶ 24                                ANALYSIS
¶ 25                        I. Sufficiency of the Evidence
¶ 26    Defendant contends that the State's evidence was insufficient to rebut, beyond a reasonable doubt, his affirmative defense of entrapment where the crime originated with a State agent and the State failed to demonstrate that he was predisposed to commit bribery. The State responds that defendant was not entrapped because he initiated contact with the government, was the first to mention a bribe, immediately offered to bribe the investigator without hesitation, was the first to discuss money, and later asked for a "wholesale rate" for deleting violations on his other properties.

¶ 27    In the instance that a defendant contests the sufficiency of the evidence to sustain a conviction, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Hall*, 194 Ill. 2d 305, 329 (2000). As a result, this court will only reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

¶ 28    In the present case, defendant was convicted of four counts of bribery. Defendant admits to the conduct for which he was convicted, but contends that he was induced to commit bribery by Arellano and asserts the affirmative defense of entrapment. Under the defense of entrapment, a person is not guilty of an offense if:

"[H]is or her conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of that person. However, this Section is inapplicable if the person was pre-disposed to commit the offense and the public officer or employee, or agent of either, merely affords to that person the opportunity or facility for committing an offense." 720 ILCS 5/7-12 (West 2006).

Hence, in order to establish such a defense, defendant must present evidence (1) that the State induced or incited him to commit the crimes and (2) that he lacked the predisposition to commit the crimes. *People v. Placek*, 184 Ill. 2d 370, 380-81 (1998). If defendant presents some degree of evidence to support his defense of entrapment, the burden then shifts to the State to rebut that defense beyond a reasonable doubt. *Id.* at 381.

¶ 29    In this case, defendant presented evidence showing that Arellano initiated contact with him on November 21, 2006, and that Arellano first broached the subject of bribery when he asked defendant if he wanted to "do business" when they met at defendant's garage at 8526 S. Burley. Defendant further testified that he only agreed to the initial bribe on November 21, 2006, as well as subsequent bribes, because Arellano told him "I can make it easy; I can make it hard," and he thought Arellano would impose more fines on his buildings if he did not pay Arellano to remove the building violations. Since defendant has presented some degree of evidence to support his entrapment defense, the burden thus shifts to the State to rebut that defense beyond a reasonable doubt.

¶ 30                              A. Inducement to Commit Bribery

¶ 31    The State asserts that the evidence shows that defendant was not improperly induced to commit the crime of bribery because Arellano did not pressure him to commit the crime and he did not hesitate to bribe Arellano when Arellano asked him if he wanted to "do business." In order for a defendant to successfully assert the defense of entrapment, he must demonstrate that he was "incited or induced" to commit the crime of bribery and that the criminal purpose originated with a "public officer or employee, or agent of either." 720 ILCS 5/7-12 (West 2006). Inducement is not established where the government merely affords the defendant an opportunity to commit the crime. *People v. Bonner*, 385 Ill. App. 3d 141, 145 (2008). In other words, entrapment does not exist as a matter of law simply because a government agent initiates a relationship leading to the offense. *Id.*

¶ 32    Arellano testified that when he and defendant met for the first time at defendant's garage at 8526 S. Burley on November 21, 2006, he asked defendant if they could speak in private. At that point, Arellano told defendant that Recendez had told him that defendant was interested in doing business and defendant did not look surprised. Then, when Arellano asked defendant if he "wanted to do some business," defendant did not hesitate before agreeing to "do business" and asking Arellano "[w]hat is it going to run me?" Arellano and defendant then discussed what would constitute a fair price, and defendant suggested that he pay Arellano $200 and arranged to pay him $60 that day and the remaining $140 at a later date. Arellano's testimony thus shows that after he offered defendant the opportunity to "do business," defendant jumped on that opportunity without hesitation. Therefore, when viewed in the light most favorable to the State, the evidence shows that Arellano merely afforded

defendant an opportunity to commit the offense and did not improperly induce him into committing bribery.

¶ 33    Defendant asserts that the evidence shows that he was not planning to bribe Arellano when he met with him on November 21, 2006, because if he had been planning to bribe Arellano, he would have met in private, without Chaparro, and would have brought enough money to bribe Arellano so he would not have to borrow $60 from Chaparro. However, it is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. *People v. White*, 241 Ill. App. 3d 291, 296 (1993). Here, the jury observed the witnesses' testimony, viewed the evidence, and determined that defendant was not improperly induced to commit bribery, and we will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence.

¶ 34    Additionally, this case is distinguishable from *People v. Poulos*, 196 Ill. App. 3d 653 (1990), cited by defendant. In *Poulos*, this court determined that a State informant had induced the defendant to deliver a controlled substance because, in addition to initiating a conversation about selling drugs, the informant repeatedly asked the defendant to sell cocaine to his friend and the defendant repeatedly refused. *Id.* at 656-59. Although the defendant eventually agreed to sell the cocaine, this court found that he had been induced because "the State more than merely afforded defendant an opportunity for the criminal act." *Id.* at 658. In this case, defendant never refused Arellano's offer and acquiesced the first time Arellano suggested the payment of a bribe in exchange for getting rid of the building violations. Therefore, this case is distinguishable from *Poulos* because regardless of whether Arellano initiated contact with defendant and was the first to mention "doing business," defendant did not hesitate or question Arellano's suggestion and took it one step further by asking Arellano how much it would cost and suggesting a price.

¶ 35    We therefore determine that, when viewed in the light most favorable to the State, the evidence demonstrates that Arellano merely afforded defendant the opportunity to commit the crime of bribery and that defendant was not improperly induced to commit that crime.


¶ 36                    B. Predisposition to Commit Bribery

¶ 37    The State asserts that sufficient evidence was presented at trial to prove that defendant was predisposed to commit bribery based on his unsolicited call to Recendez and his eagerness to bribe Arellano on multiple occasions. Defendant contends that the evidence shows that he was not predisposed to commit bribery before Arellano approached him. Defendant also asserts that Recendez's testimony regarding his initial phone conversation with her cannot help establish his predisposition to commit bribery because the jury dismissed that testimony when it found him not guilty on the count of bribery alleging that he promised to buy her lunch with the intent to prevent the demolition of his garage.

¶ 38    In order to prove predisposition, the evidence must establish that the defendant was "ready and willing to commit the crime without persuasion and before his or her initial exposure to government agents." *People v. Criss*, 307 Ill. App. 3d 888, 897 (1999). In addition, "[t]he determination of predisposition to commit crime[s] rests upon the facts of

the case" (*Poulos*, 196 Ill. App. 3d at 661), and the issue is therefore one for the trier of fact (*People v. Dunn*, 251 Ill. App. 3d 772, 778 (1993)). There are several factors to consider in determining whether a defendant was predisposed to commit a crime, including (1) the character of the defendant; (2) whether the government initiated the alleged criminal activity; (3) whether the defendant had a history of criminal activity for profit; (4) whether the defendant showed hesitation in committing the crime, which was only overcome by repeated persuasion; (5) the type of inducement or persuasion applied by the government, or the way in which it was applied; and (6) the defendant's prior criminal record. *People v. Kulwin*, 229 Ill. App. 3d 36, 39 (1992).

¶ 39 The evidence in this case, when viewed in the light most favorable to the State, shows that defendant showed no hesitation before committing the crime of bribery where Arellano testified that defendant did not hesitate before agreeing to his offer to "do business" and then inquired as to the cost. The State's evidence also shows that Arellano did not improperly induce defendant to commit bribery where he was acting on Recendez's complaint when he contacted defendant and merely afforded him the opportunity to commit the crime of bribery. Although a number of the other factors to consider favor defendant, the issue of whether he was predisposed to commit bribery is a question of fact to be resolved by the jury. *Dunn*, 251 Ill. App. 3d at 778. In this case, the jury's finding that defendant was predisposed to commit bribery is supported by the evidence showing that he showed no hesitation before committing the crime and was not subjected to improper inducement or repeated persuasion, and we therefore will not substitute our judgment for that of the jury on this matter.

¶ 40 We also note that this court's holdings in *People v. Boalbey*, 143 Ill. App. 3d 362 (1986), and *People v. Poulos*, 196 Ill. App. 3d 653 (1990), cited by defendant, are distinguishable because unlike in those cases, where the defendants committed the relevant crimes after refusing repeated offers by the government agents, here defendant immediately accepted Arellano's initial offer and showed no hesitation before committing the crime. We therefore determine that the evidence, when viewed in the light most favorable to the State, shows that defendant was predisposed to commit the crime of bribery and conclude that the State presented sufficient evidence to rebut defendant's defense of entrapment beyond a reasonable doubt.

¶ 41                                      II. Right to Present a Defense

¶ 42 Defendant next contends that the trial court denied him his right to present a defense when it prevented him from presenting evidence that he had never previously engaged in bribery or a similar type of conduct where it denied his motion to introduce evidence and sustained an objection by the State to his testimony regarding whether he had previously bribed a building inspector. The State responds that defendant was not prevented from presenting a defense where he testified on cross-examination that he had many interactions over several years with building inspectors and had never given them money. The State also asserts that the trial court properly sustained the prosecutor's objection to defendant's testimony regarding whether he had previously bribed a building inspector. Additionally, the State maintains that any error on the part of the trial court was harmless beyond a reasonable

-10-

doubt.

¶ 43 A criminal defendant is constitutionally guaranteed a meaningful opportunity to present a complete defense. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). A defendant who raises the affirmative defense of entrapment has a right to introduce evidence of a lack of prior criminal behavior such as that with which he is charged because it is relevant to the trier of fact's determination of his predisposition. *People v. Dobrino*, 227 Ill. App. 3d 920, 930 (1992). Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent a finding that the court has abused its discretion, which may only be found where its ruling is arbitrary or unreasonable or where no reasonable person would take the same view. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). To establish that a trial court's error is harmless, "the State must prove beyond a reasonable doubt that the result would have been the same absent the error." *People v. Nitz*, 219 Ill. 2d 400, 410 (2006).

¶ 44 The record shows that defendant testified on cross-examination that he had never given money to a building inspector in connection with previous violations involving his property. In addition, Chaparro testified that defendant had a reputation in the community for truthfulness, honesty, and good character. Therefore, defendant was not prevented from presenting evidence showing that he had never previously engaged in bribery or a similar type of conduct where he testified to that fact and Chaparro testified as to his reputation for honesty and truthfulness. In addition, to the extent the trial court may have committed error in denying defendant's pretrial motion or sustaining the State's objection to his testimony, such error would be harmless beyond a reasonable doubt where he presented uncontradicted evidence at trial that he had not previously engaged in bribery or similar conduct and the jury nonetheless found him guilty of bribery based on the strength of the State's evidence.

¶ 45                              III. One-Act, One-Crime

¶ 46 Defendant further contends that his convictions for the counts of bribery alleging criminal conduct on December 15 and 18, 2006, violate the one-act, one-crime doctrine, and the State responds that his convictions are proper because those two counts are based on separate acts. A person commits the crime of bribery when, "[w]ith the intent to influence the performance of any act related to the employment or function" of a public employee, he "promises or tenders" to that employee property or personal advantage which the employee would not be authorized by law to accept. 720 ILCS 5/33-1(b) (West 2006). Thus, the act of bribery is complete as of the promise where it is given with the requisite intent. *People v. Wallace*, 57 Ill. 2d 285, 290 (1974). Under the one-act, one-crime doctrine, a court shall not impose multiple convictions where multiple offenses are carved from the same physical act. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996); *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 47 Defendant asserts that his tender of $140 to Arellano on December 18, 2006, was merely the realization of his earlier promise to provide Arellano with half of the $300 he was paying Arellano to delete building violations on four of his properties, and did not constitute a separate crime. The State responds that the counts for December 15 and 18, 2006, alleged separate acts and could support separate convictions because the December 15 count

-11-

pertained to defendant's offer to pay Arellano $150 to delete three minor violations and the December 18 count pertained to the separate promise to pay Arellano $150 to eliminate one "big" violation.

¶ 48　The evidence presented at trial shows that on December 15, 2006, defendant promised to pay Arellano a total of $300 to delete four violations from the City's computer where he promised to pay $150 for the deletion of one "big" violation and $50 each for three smaller violations. The counts for December 15 and 18 both allege that defendant promised or tendered Arellano money on those dates with the intent to influence him to remove building code violations' complaints from the City's records. Nowhere in these charges does the State attempt to apportion these offenses among the various promises. Thus, the December 15 charge encompasses defendant's promise to pay Arellano $300 to delete all four violations, and not just the three minor violations as the State now asserts. Therefore, because the act of bribery was complete when defendant promised to pay Arellano $300 (*Wallace*, 57 Ill. 2d at 290), he is now being convicted of bribery for both that promise and the subsequent tender of a portion of that sum on December 18, and his conviction for the payment of $140 on December 18 therefore violates the one-act, one-crime doctrine. Although defendant could have been charged with multiple crimes for his multiple promises made on December 15, the State only charged him with one count of bribery for his actions that day and, as such, he may only be convicted of one crime. *People v. Crespo*, 203 Ill. 2d 335, 345 (2001).

¶ 49　Having determined that one of defendant's convictions for bribery must be vacated, we must also consider whether to remand the matter to the trial court for resentencing. Defendant asserts that resentencing is necessary because the trial court imposed a single sentence for all four bribery counts and it cannot be determined from the record whether the existence of the invalid fourth conviction played a role in the court's sentencing determination. However, the record shows that during sentencing, the trial court stated "[l]et me back up just a minute. I want to make this clear. The sentences on Counts 10, 12, 13, and 14, it's the same sentence for each one of those counts but each one of those will run concurrent with each other, okay." It is therefore clear from the record that defendant was sentenced separately on each of the four counts and that the one improper conviction for bribery did not affect the duration or severity of his sentence.

¶ 50　　　　　　　　　　　　　CONCLUSION

¶ 51　For the foregoing reasons, we vacate defendant's conviction for count 13, which alleged that he committed the crime of bribery on December 18, 2006, and affirm the judgment of the trial court in all other respects.

¶ 52　Affirmed in part and vacated in part.